UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

K. DENISE RUCKER KREPP,
1837 A Street SE
Washington, DC 20003,

          Plaintiff,

VS.

UNITED STATES DEPARTMENT OF
JUSTICE,
950 Pennsylvania Avenue NW
Washington, DC 20530-0001,

          Defendant.

CIVIL ACTION NO.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.    This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to enforce the right of the citizens of the District of Columbia to have access to criminal prosecution data maintained by the United States Department of Justice (the "DOJ").

2.    On November 5, 2015, Plaintiff K. Denise Rucker Krepp ("Ms. Krepp") filed a FOIA Request (the "Request") seeking data concerning criminal prosecutions in the District of Columbia handled by the DOJ. A copy of Ms. Krepp's Request is appended hereto as Exhibit 1. Specifically, the Request sought:

- The number of criminal homicide, rape, robbery, aggravated assault, burglary, larceny, motor vehicle theft, and arson arrests that DOJ attorneys reviewed;

- The number of criminal homicide, rape, robbery, aggravated assault, burglary, larceny, motor vehicle theft, and arson cases DOJ attorneys prosecuted;

- Of the crimes prosecuted, the conviction rate of each crime; and

- How many criminal homicide, rape, robbery, aggravated assault, burglary, larceny, motor vehicle theft, and arson arrests were resolved by plea deals.

3.     Ms. Krepp's FOIA Request sought the data above for the time period of January 1, 2010 through December 31, 2015, and requested the data be broken down across DC's eight Wards.

4.     None of the data sought in the Request implicates any of FOIA's exemptions in relation to confidential enforcement policies or confidential details of any specific criminal case.

5.     Ms. Krepp's Request included an application for a waiver of fees under 5 U.S.C. § 552(a)(4)(A)(iii) because the Request "concerns prosecution rates and the disclosure will contribute to a better understanding of DOJ's efforts to prosecute individuals that have committed crimes in Washington, D.C." Exhibit 1 at 2.

6.     Two months later, on January 5, 2016, DOJ responded by denying the Request, claiming that the data requested by Ms. Krepp did not exist (the "Denial"). A copy of the Denial is appended hereto as Exhibit 2.

7.     Unconvinced and undeterred by the Denial, and knowing that the DOJ had issued reports to the public that appeared to rely on the data she was requesting, on January 21, 2016 Ms. Krepp filed an administrative appeal, requesting that the denial of her Request be reversed (the "Appeal"). A copy of Ms. Krepp's Appeal is appended hereto as Exhibit 3.

8.     On March 16, 2016, the DOJ responded to Ms. Krepp's Appeal by affirming its Denial, but notably implied that it may have the data in a slightly different format than Ms. Krepp originally requested (the "Affirmance"). A copy of the Affirmance is appended hereto as Exhibit 4.

9.     Ms. Krepp filed her FOIA Request seeking information from the DOJ concerning criminal prosecutions because she and her neighbors are concerned that dangerous criminals are being arrested by the local police department, but when it comes time to prosecute those criminals, the DOJ is failing to follow through on its duty to enforce DC's laws.

10.    Additionally, Ms. Krepp and her neighbors have seen multiple instances of violent criminals being arrested and then released back into the community, where they have promptly committed crimes again.

11.    Because the District of Columbia is unable to have its own local criminal prosecutor (who would be accountable to the voters and/or the Mayor), Ms. Krepp had to resort to filing her Request to obtain the type of data that should be readily available to the public.

12.    Despite a significant public interest in the data, the DOJ has ignored its obligation to be transparent to the public, and has instead chosen to stonewall Ms. Krepp, refusing to provide even the most basic prosecutorial data.

13.    The DOJ's stated reason for denying Ms. Krepp's Request – that such data does not exist – is without merit.  Besides it being highly unlikely from a logical standpoint that an agency charged with criminal prosecutions would not maintain data related to what prosecutions it is maintaining, the DOJ has included prosecutorial data in reports it has released to the public.

14.    Thus, it appears that the DOJ will only share prosecutorial data when such data is released in a manner controlled by the DOJ, and will not provide the very same data underlying its reports to the citizens who are directly affected by the DOJ's policies.  This practice violates FOIA's purpose as "the law that keeps citizens in the know about their government." Department of Justice, *What is FOIA?*, http://www.foia.gov/about.html ( last visited May 5, 2016).

15.     Ironically, the DOJ's own Bureau of Justice Statistics ("BJS") regularly compiles data regarding state prosecutorial data, including felony and misdemeanor dispositions reported to data repositories.   *See* Department of Justice, *2007 National Census of State Court Prosecutors* (December 2011), at p. 8 Table 10, http://www.bjs.gov/content/pub/pdf/psc07st.pdf.

16.     The DOJ has failed to provide data that it has access to and is unable to articulate any valid reason for not releasing such data.   Accordingly, the DOJ has failed to properly respond to Ms. Krepp's Request and has withheld records in violation of FOIA.

## PARTIES

17.     Plaintiff K. Denise Rucker Krepp is a citizen of the District of Columbia, residing in the Hill East neighborhood in Ward 6.  Ms. Krepp is an elected Commissioner for Advisory Neighborhood Commission ("ANC") 6B10, where she represents her neighborhood as an advocate, providing input to the District of Columbia government on a variety of matters, including zoning, licensing, transportation, and crime.

18.     Defendant Department of Justice is a Department of the Executive Branch of the United States Government and an agency within the meaning of 5 U.S.C. § 552(f)(1).  The DOJ is headquartered in Washington, DC.  The United States Attorney's Office for the District of Columbia ("USAO") is a component of the DOJ.  The DOJ has possession of the documents sought by Ms. Krepp.

## JURISDICTION

19.     This Court has subject matter jurisdiction and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B).  This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1346.

4

## VENUE

20.    Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(e) and 1402.  Ms. Krepp is a resident of this district.

## FACTUAL ALLEGATIONS

### DC's Unique – and Unfair – Lack of Local Control over Enforcement of its Criminal Laws

21.    The District of Columbia is in a unique position with regard to the entities responsible for the prosecution of its criminal laws.

22.    Because the District of Columbia is not a state and is subject to federal oversight, enforcement of DC's laws is the responsibility of USAO prosecutors.  *See* https://www.justice.gov/usao-dc ("[The USAO] serves as both the local and the federal prosecutor for the nation's capital.   On the local side, these prosecutions extend from misdemeanor drug possession cases to murders.").

23.    Attorneys in the USAO are hired by the DOJ, retained by the DOJ, and all personnel decisions are left to the DOJ.

24.    The citizens of the District of Columbia have no say in who leads the USAO for DC.  There is no elected official (or even an official appointed by the Mayor of DC) who is accountable to DC voters and responsible for the enforcement of DC's criminal laws.

25.    In fact, DC's entire criminal justice system (with the exception of its police force) is run by federal – not local – agencies with little accountability to the residents of DC.

26.    A recent front-page *Washington Post* story illustrates the repercussions of such a system: it tracks the path of a young man who was committing increasingly violent crimes, but instead of being treated like a dangerous repeat violent offender, the DC criminal justice system kept releasing him back into the community.  Amy Brittain, *How an accused rapist kept getting*

5

*second chances from the D.C. justice system*, THE WASHINGTON POST (May 14, 2016), http://wpo.st/qjc_1.

27.     That man now stands trial for the sexual assault of a neighbor of Ms. Krepp, which allegedly occurred a week after the man had failed to attend mandatory meetings with his parole officer, and a month after the man had been released from jail on his own recognizance with pending charges related to, among other things, tampering with a GPS monitoring device (which he had cut off himself). *Id.*

28.     To be sure, a multitude of factors have contributed to what DC's own police chief has referred to as a "revolving door for violent offenders" (*id.*), but DC's lack of local control over its own criminal justice system is particularly offensive because it virtually shuts out of the process the very people it is supposed to be protecting, including Ms. Krepp and her neighbors.

**The Capitol Hill Neighborhood Witnesses a Spike in Crime**

29.     As a concerned citizen (and an elected ANC Commissioner), Ms. Krepp has seen first-hand how crime – from petty theft to more violent crime such as rape and assault – has negatively affected her neighborhood (and the District of Columbia in general).

30.     Since 2015 and into 2016, instances of crime as tracked by the District of Columbia Metropolitan Police Department ("DC MPD") have increased.

31.     For example, from 2014 to 2015, homicides increased by 54% and robberies increased by 5%.  Overall violent crime increased by 2%.[1]

32.     Furthermore, 2016 has seen an even larger increase in violent crime.  As of May 4, 2016, compared to the same period in 2015, homicides are up 5%, sex abuse crimes are

---

[1] DC crime statistics were obtained from DC MPD's "District Crime Data at a Glance" website, http://mpdc.dc.gov/node/197622 (last accessed May 4, 2016).

up 6%, assaults with a dangerous weapon are up 4%, and robberies are up 13%.  Non-auto thefts (classified separately as "property crime") are also up 5%.

**Despite a Rise in Crime, the DOJ has Appeared Unwilling to Prosecute Criminals**

33.     Although Ms. Krepp and her neighbors have seen an uptick in certain crime and related arrests, it has not appeared that the alleged perpetrators of the crimes are being fully prosecuted after their arrest.

34.     Instead, Ms. Krepp and others have witnessed many instances of the USAO choosing not to bring criminal cases against individuals arrested for crimes, despite ample evidence and witnesses willing to testify.

35.     This means that in some instances, perpetrators of crime in Ms. Krepp's neighborhood (and elsewhere in the District) are arrested, spend no more than a few days in jail, and are then released back onto the street because prosecutors have not brought criminal charges against them.

36.     In other instances, USAO attorneys initially bring criminal charges against defendants, but the prosecutors subsequently drop those charges for reasons unknown to the public.

37.     Finally, in other instances, USAO attorneys seek plea bargains with defendants that are extremely favorable to the defendants, allowing them to be released almost immediately back into the neighborhoods where they committed their crimes.

38.     Although there may be legitimate bases for these decisions, the public does not have access to information regarding how often these decisions occur, nor is the DOJ providing information about how often its USAO attorneys are moving forward with criminal prosecutions.

7

### Ms. Krepp Seeks Information from the DOJ

39.     Concerned that the USAO appeared to be neglecting its duties as criminal prosecutor on behalf of the citizens of the District of Columbia, Ms. Krepp began asking the DOJ for information relating to prosecutions in her Ward.

40.     Ms. Krepp attended multiple community meetings related to crime, where she asked USAO officials for statistics relating to how the USAO for DC was prosecuting individuals who had been arrested by DC MPD for crimes in her neighborhood.

41.     Despite the current presidential administration's claim to being the "most transparent administration in history,"[2] the DOJ continually rebuffed Ms. Krepp's reasonable requests for prosecutorial data.

### Ms. Krepp Files Her Request

42.     Frustrated with the DOJ's refusal to provide any data relating to actions that directly affected her and her neighbors, Ms. Krepp decided to formally request the data through a FOIA Request.

43.     Thus, on November 5, 2015, Ms. Krepp filed a FOIA Request with the DOJ, seeking statistics relating to the DOJ's review and prosecution of criminal homicide, rape, robbery, aggravated assault, burglary, larceny, motor vehicle theft, and arson. *See* Exhibit 1.

44.     The DOJ acknowledged receipt of the Request on November 23, 2015.  Notably, the DOJ's November 23 response did not acknowledge Ms. Krepp's request for a fee waiver, and asked Ms. Krepp what amount she would be willing to pay for the information she requested. *See* November 23, 2015 Letter, appended as Exhibit 5.

---

[2] Jonathan Easley, *Obama says his is 'most transparent administration' ever.* THE HILL (Feb. 14, 2013, 11:14 PM), http://thehill.com/blogs/blog-briefing-room/news/283335-obama-this-is-the-most-transparent-administration-in-history.

45.     The DOJ's request for funds to cover the search and reproduction of the data was without merit, because Ms. Krepp's request met the requirements for a fee waiver, which Ms. Krepp had requested. *See* Exhibit 1 at 2.

**Ms. Krepp Holds a Bake Sale to Raise Money for Her Request**

46.     Ms. Krepp responded to the DOJ's November 23 letter by stating she would be willing to pay up to $1,000 for fees related to her Request.

47.     Faced with a request from the DOJ for funds to cover the Request, Ms. Krepp set out to raise money via a method that any parent of school-aged children knows is extremely effective: she hosted a bake sale.

48.     The "#FOIACakes" bake sale (as it was known on social media) was extremely successful, thanks to a combination of delicious cookies, brownies, and other baked goods and outrage by Ms. Krepp's neighbors that the DOJ was demanding payment for data that should be readily available to the public.[3]

49.     All told, the #FOIACakes bake sale raised $1,867 in support of Ms. Krepp's Request.

50.     On December 14, 2015, Ms. Krepp followed up on her Request with a letter to DOJ, informing the agency that she had raised $1,867 and was willing to pay fees related to the Request up to that amount. A copy of that letter is appended hereto as Exhibit 6.

**DOJ Denies the Request; Ms. Krepp Appeals**

51.     On January 5, 2016, two months after Ms. Krepp filed it, the DOJ denied her Request, stating that it had no "responsive records regarding" the Request. *See* Exhibit 2.

---

[3] *See, e.g.,* Peter Hermann and Perry Stein, *D.C. woman seeking conviction-rate data isn't deterred by cost of request*, THE WASHINGTON POST (Dec. 12, 2015), http://wpo.st/VisY1; Andrew Giambrone, *FOIA Bake Sale Brings in More Than $1,000 to Help Get Federal Data on D.C. Convictions*, WASHINGTON CITY PAPER (Dec. 14, 2015, 12:46 PM), http://www.washingtoncitypaper.com/blogs/citydesk/2015/12/14/foia-bake-sale-brings-in-more-than-1000-to-help-get-federal-data-on-d-c-convictions/.

52.     Undeterred, and suspecting that the DOJ did have the data she sought, Ms. Krepp filed a timely appeal of the Denial on January 21, 2016. *See* Exhibit 3.

53.     The Appeal pointed out that it was unlikely that the agency would not track this information, that the DOJ had released reports containing information similar to what Ms. Krepp was requesting, and that in recent press statements, the DOJ had itself referred to monthly reports it released containing this data. *See* Exhibit 3.

54.     The DOJ acknowledged receipt of Ms. Krepp's appeal on February 2, 2016.[4]

55.     On March 16, 2016, the DOJ affirmed its Denial. *See* Exhibit 4.

56.     Notably, the Affirmance implied that the DOJ may maintain the data requested, just not in the exact format requested by Ms. Krepp.  Ms. Krepp's Request asked for the data organized by Ward; the Affirmance indicated that the DOJ may have this information organized by police district. *See* Exhibit 4 ("Please be advised that police service areas, also known as the districts [sic], are used for reporting purposes.  The USAO does not track this information by ward or in the specific manner which you are requesting.").

57.     The DOJ's Affirmance went on to suggest that Ms. Krepp "make a new request to [the DOJ] for prosecutions and convictions by crime or by district." *Id.*

### The DOJ Has Access to the Requested Prosecutorial Data

58.     Despite its official claims to the contrary, the DOJ does appear to maintain data relating to criminal prosecutions in the District of Columbia.

59.     As an initial matter, logic would dictate that an office charged with enforcing criminal laws through prosecutions would maintain information relating to the disposition of cases it handles (*e.g.*, non-prosecution, plea bargain, prosecution and conviction, prosecution and

---

[4] The DOJ issued a second acknowledgement on February 4, 2016, apparently mistakenly assigning the appeal two different case numbers; this issue was resolved when the DOJ later issued its decision on the appeal.

not guilty verdict, etc.); such data would be necessary for an office to set its budgetary and staffing needs.

60.     On information and belief, the DOJ relies on computer systems to monitor and track criminal cases that are handled by the USAO.  One such system is called the "Replicated Criminal Information System," or "RCIS."

61.     On information and belief, the DOJ is able to query one or more of these systems to obtain the data that Ms. Krepp has requested with a reasonable amount of effort.

62.     Further, the DOJ has used the very same data Ms. Krepp has requested in reports released to the public.

63.     For example, Annual Statistical Reports issued by the Offices of the United States Attorneys dating back to at least 2010[5] each contain a section pertaining to crimes and prosecutions in District of Columbia Superior Court.

64.     These reports include overall data such as the number of "Arrests Reviewed" for felonies and misdemeanors, "Cases Disposed of by Jury Trials," "Cases Disposed of by Court Trials," (each tracking guilty verdicts, not guilty verdicts, and mistrials), and "Dispositions" (tracking guilty pleas, dismissals, and convictions for felonies and misdemeanors). *See, e.g., United States Attorneys' Annual Statistical Report Fiscal Year 2015* at 65, https://www.justice.gov/usao/file/831856/download; *United States Attorneys' Annual Statistical Report Fiscal Year 2013*, at 14, https://www.justice.gov/sites/default/files/usao/legacy/2014/09/22/13statrpt.pdf.

65.     Although these reports are useful for providing <u>some</u> of the information Ms. Krepp seeks, they only tell part of the story; Ms. Krepp's Request seeks <u>all</u> of the relevant data related to criminal prosecutions, not just select data that the DOJ has chosen to publish.

---

[5] The Annual Statistical Reports are available at https://www.justice.gov/usao/resources/annual-statistical-reports.

66.     Finally, the DOJ, in its own correspondence to Ms. Krepp affirming its Denial, has admitted that it does maintain at least some of the information sought, but perhaps not in the exact format and organization requested by Ms. Krepp (by Ward, not police district).

67.     Such a technicality is not a valid basis for denial of a FOIA request.

68.     The intent and "spirit" of FOIA, as well as the Obama Administration (which oversees the DOJ), is for transparency in government, and agencies are instructed to err on the side of complying with a FOIA request even if the format requested is not precisely the format in which the data is available.

69.     Further, the U.S. Attorney for the District of Columbia himself, Channing D. Phillips, has repeatedly told the community that crime is a priority for the USAO, and that he *wants* to provide the information Ms. Krepp has sought.

70.     Ms. Krepp should not be – and is not – required under the law to file a completely new FOIA request simply because the DOJ maintains criminal prosecution data organized by police district rather than Ward.

71.     Instead, the DOJ is required to provide the data sought by the Request in the manner in which it is stored; a full denial of the FOIA Request is wholly inappropriate.

72.     The individuals responsible for the Denial and subsequent Affirmance, well-trained and experienced DOJ FOIA Officers, knew or should have known about the agency's transparency and FOIA's requirement that agencies err on the side of disclosure.

73.     That the DOJ's FOIA Officers would still refuse to provide the requested data indicates an effort by the DOJ to avoid providing data that should be shared with the public and for which it has no basis to withhold.

**Plaintiff Has Exhausted Her Administrative Remedies**

74.     As discussed more fully above, after receiving the Denial, Ms. Krepp timely filed an administrative appeal on January 21, 2016, which resulted in an affirmance by the DOJ on March 16, 2016.

75.     Thus, Ms. Krepp has exhausted all applicable administrative remedies.

## CLAIM FOR RELIEF

### Violation of Freedom of Information Act

76.     Plaintiff incorporates the above paragraphs as if fully set forth herein.

77.     Defendant Department of Justice has failed to comply with its obligations under FOIA to provide the information requested by Plaintiff Ms. Krepp.

78.     Plaintiff has a right of access to the requested information under 5 U.S.C. § 552(a)(3), and there is no legal basis for Defendant's denial of such access.

79.     Plaintiff has exhausted the applicable administrative remedies with respect to the DOJ's failure to comply with Plaintiff's requests.

80.     Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested documents because Defendant Department of Justice continues to improperly withhold agency records in violation of FOIA.

81.     Plaintiff will suffer irreparable injury from, and has no adequate legal remedy for, the DOJ's illegal withholding of government documents pertaining to the subject of Plaintiff's FOIA Request.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

A.     Order Defendant DOJ to immediately provide or make available the requested documents in their entirety;

B.      Order Defendant DOJ to grant Plaintiff's request for a fee waiver as provided for in 5 U.S.C. § 552(a)(4)(A)(iii);

C.      Declare that the DOJ's failure to disclose the records requested by Plaintiff is unlawful;

D.      Enjoin the DOJ from withholding records responsive to the Request;

E.      Award Plaintiff her litigation costs and reasonable attorneys' fees incurred in this action as provided in 5 U.S.C. § 552(a)(4)(E); and

F.      Grant such other relief as the Court may deem just and proper.


Dated:  March 16, 2016                           Respectfully submitted,

BUCKLEYSANDLER LLP
John B. Williams III (DC Bar # 983677)
Jeffrey Naimon (DDC admission pending)
Ignacio J. Hiraldo (DDC admission pending)
Angela Parr (DDC admission pending)
1250 24th Street NW, Suite 700
Washington, DC 20037
Email:          jwilliams@buckleysandler.com
                jnaimon@buckleysandler.com
                ihiraldo@buckleysandler.com
                aparr@buckleysandler.com
Telephone:      202-349-8000
Facsimile:      202-349-8080

*Counsel for Plaintiff K. Denise Rucker Krepp*